| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| ------------------------------------------------------------------x | |
| In re: | Chapter 11 |
| MICHAEL G. TYSON, et al., | Case No. 03-41900 (ALG) |
| Debtors. | (Jointly Administered) |
| ------------------------------------------------------------------x | |
| R. TODD NEILSON, Plan Administrator of the MGT Chapter 11 Liquidating Trust, on behalf of the MGT Chapter 11 Liquidating Trust and on behalf of Michael G. Tyson, an individual, | |
| Plaintiff, | |
| -against- | Adv. Proc. No. 05-02210 (ALG) |
| STRAIGHT-OUT PROMOTIONS, LLC, a Kentucky Limited Liability Company; CHRIS WEBB, an Individual; BREARLY (INTERNATIONAL) LIMITED, a Gibraltar corporation; FRANK WARREN, an individual; SPORTS NETWORK, PLC, a United Kingdom corporation; SPORTS & LESIURE, BOXING LTD., a United Kingdom corporation; and EDWARD SIMONS, an individual, | |
| Defendants. | |
| ------------------------------------------------------------------x | |

**MEMORANDUM OF OPINION**

A P P E A R A N C E S:

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP
Counsel for Plaintiff, R. Todd Neilson
  By:  Robert J. Feinstein, Esq.
        Alan J. Kornfeld, Esq.
        Beth E. Levine, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017

J. BRUCE MILLER LAW GROUP
Counsel for Defendants Straight-Out Promotions, LLC and Chris Webb
  By:  J. Bruce Miller, Esq.
        Michael J. Kitchen, Esq.
605 W. Main St.
Louisville, Kentucky 40202

ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE

      The plaintiff in the above referenced adversary proceeding, R. Todd Neilson (the "Plaintiff"), is the Plan Administrator for former Chapter 11 debtors Mike Tyson and Mike Tyson Enterprises, Inc. (the "Debtors"). Defendants, Straight-Out Promotions LLC ("Straight-Out") and Chris Webb ("Webb," and together with Straight-Out, the "Defendants"), are boxing promoters. The Defendants have filed a motion to set aside a default judgment entered against them on May 31, 2006.

## Facts

      The Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code on August 1, 2003. The Court confirmed the Debtors' First Amended Joint Plan of Reorganization (the "Plan") on September 27, 2004. Under the Plan, Tyson is required to make certain payments to creditors and to contribute to the estate a portion of his future fight earnings. He also contributed to the estate for the benefit of creditors certain causes of action. The effective date of the Plan was November 30, 2004.

      The Plaintiff is responsible for collecting any contributions the Debtors made pursuant to the Plan and prosecuting causes of action concerning claims of the estate. On June 15, 2005, Plaintiff filed the initial Complaint, which alleges claims against the moving Defendants and two other defendants, Brearly International Limited and Frank Warren, arising out of a boxing match between Mike Tyson and Danny Williams (the

2

"Fight") which took place in Kentucky on July 30, 2004. The Complaint as initially drafted asserted that the Defendants are liable in the amount of more than $1,700,000, representing the balance of the amount payable to Tyson for participating in the Fight. An additional count of the original Complaint charged that Defendant Webb and another defendant defrauded Tyson in connection with inducing him to take part in the Fight.

Plaintiff served the Complaint on the two moving Defendants on June 16, 2005, and on the other defendants at various times in 2005. Warren answered and has been contesting the allegations. Brearly filed an answer, allegedly *pro se*, but has not otherwise appeared. The moving Defendants failed to answer the Complaint on a timely basis. On November 1, 2005, upon Plaintiff's request, the Clerk of the Court certified the default and, pursuant to the directions of the Court, on February 2, 2006, Plaintiff filed a Motion for Default Judgment (the "Default Motion"), which was scheduled to be heard on February 23, 2006. Plaintiff agreed to a thirty-day extension, requested by Webb on February 21, 2006, to answer the Complaint. The Court adjourned the hearing on the Default Motion to March 29, 2006.

In a letter to Plaintiff dated March 21, 2006, Webb again requested an extension of time to answer the Complaint, stating that he was not in a position to respond to the Default Motion. This was apparently not agreed to, and Webb informed Plaintiff that he was traveling to New York in advance of the hearing scheduled for March 29th and intended to retain counsel to represent Defendants at the hearing. Neither Webb nor counsel appeared on behalf of the Defendants at the March 29th hearing. At that hearing, the Court imposed a deadline of April 29, 2006, for Defendants to file a response to the Complaint. On March 30, 2006, Plaintiff informed Defendants of this deadline by letter

3

and that Defendants' failure to answer might result in entry of a default judgment against them. Defendants failed to respond to the Complaint by April 29, 2006.

In a letter dated May 3, 2006, Plaintiff informed Webb that a hearing on the matter had been scheduled for May 10, 2006, and that Plaintiff intended to proceed with the Default Motion. Webb sent a letter to Plaintiff prior to the May 10th hearing asserting that he could not afford counsel in New York. He requested an additional extension of sixty days. Upon being informed by Plaintiff's counsel of this request, but there having been no appearance for Defendants, the Court refused to grant a further extension and directed Plaintiff to submit a proposed order granting the Default Motion. The Court nevertheless allowed Defendants ten days to object to entry of the order. The Court also specifically directed Plaintiff to inform Defendants that they had the right to object to entry of the order prior to its presentment date of May 30, 2006. Defendants did not object to the proposed order prior to the presentment date, and a default judgment was entered against them on May 31, 2006.

Subsequent to the entry of the default judgment against the moving Defendants, Plaintiff continued to prosecute the case against the remaining defendants. On May 7, 2007, Plaintiff moved to amend the complaint to include Sports Network, PLC, Sports & Leisure, Boxing, Ltd., and Edward Simons as defendants. Then, on May 16, 2007, the moving Defendants first appeared with counsel. They proceeded to file the instant motion to vacate the default judgment on May 30, 2007, claiming that the judgment should be vacated under F. R. Civ. P. 60(b) and 55(c) because (i) this Court did not have jurisdiction; (ii) venue was improper; (iii) the defaults were not willful and were excusable; and (iv) Plaintiff had waived the default by moving to amend the Complaint.

4

Analysis

Jurisdiction

Defendants question the subject matter jurisdiction of this Court in their moving papers. Since jurisdiction is an issue that goes to a plaintiff's ability to obtain and enforce even a default judgment, it must be considered first. A judgment issued by a court without jurisdiction is void. *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 193 (2d Cir. 2006); *see also*, *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d 189, 194 (2d Cir. 1989).

Jurisdiction over this case is based on 28 U.S.C. § 1334(b) on the theory that it is an action related to a case under title 11, the United States Bankruptcy Code. Defendants do not assert that the Court would not have proper jurisdiction over this adversary proceeding if it had been litigated prior to confirmation of the Debtors' Plan, because it seeks to recover property of the estate for the benefit of the estate. Rather, Defendants rest their argument on the fact that the lawsuit was initiated after the confirmation of the plan of reorganization, citing *In re General Media, Inc., v. Guccione*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005), for the proposition that "once confirmation occurs, the bankruptcy court's jurisdiction shrinks."

Both parties agree that the two-prong test set forth by the Court in *General Media* is the appropriate standard for determining whether a bankruptcy court has post-confirmation jurisdiction over a cause of action. *See also, Hosp. & Univ. Prop. Damage Claimants v. Johns Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993); *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 169 (3d Cir. 2004); *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194

5

(9th Cir. 2005). The Court in *General Media* stated that a party must satisfy two requirements in order to sustain bankruptcy court jurisdiction post-confirmation. "First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement. . . . Second, the plan must provide for the retention of jurisdiction over the dispute." *General Media,* 335 B.R. at 73-74.

In the instant case, both requirements are satisfied. First, there is a "close nexus" between this adversary proceeding and the Plan. The court in *General Media* held that the matter there lacked a "close nexus" to the plan because the claims did not arise under the plan and "the case has been fully administered and all of the recovery will go to the reorganized debtor rather than to the creditors." *Id.* at 75. Any proceeds recovered in this proceeding, by contrast, will be paid to the creditors, and the chapter 11 proceedings have not been fully administered. Second, § 10.1.13 of the Plan provides for this Court's retention of jurisdiction "to hear and resolve any causes of action involving the Debtors, the Reorganized Debtor, or the Estates that arose prior to the Effective Date or in connection with the implementation of the Plan." The second requirement posited by *General Media* is thus also met, as the cause of action against the Defendants clearly arose before the Effective Date.

Defendants argue that a finding that the interpretation and enforcement of a contract entered into by Tyson is subject to this Court's jurisdiction would stretch jurisdiction far beyond anything envisioned by the statutory scheme. Defendants are off the mark. The jurisdiction of the Bankruptcy Court after confirmation of a plan may

6

shrink, but it does not disappear. Bankruptcy courts clearly have core jurisdiction to enforce a debtor's post-petition contracts. *United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 637-38 (2d Cir. 1999), citing *Ben Cooper, Inc. v. Insurance Co. (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1399-1400 (2d Cir.), *vacated on other grounds*, 498 U.S. 964 (1990), *opinion reinstated*, 924 F.2d 36 (2d Cir. 1991). There is no sound reason why a cause of action accruing to the estate prior to confirmation cannot be pursued by the estate after confirmation where the plan clearly provides therefor and discloses the reservation and where the benefits go to creditors. Any other rule might result in unreasonable delay in entry of a confirmation order or require prejudicial haste in the prosecution of pre-confirmation litigation.

<u>Venue</u>

Defendants also argue that venue in this Court is improper because the contract between Straight-Out and Tyson relating to the Fight contained a forum selection clause that designated Jefferson County, Kentucky as the venue for disputes between the parties. Whether or not this provision would have governed if the Defendants had timely asserted it, Defendants themselves concede that objections to venue may be waived. *See* Mem. In Supp. of Defs' Mot. To Set Aside Default J. at 14. Pursuant to Fed. R. Civ. P. 12(a), a defendant must assert an improper venue defense "within twenty days after being served with the summons and complaint." Here, Plaintiff served the Complaint on Defendants on June 16, 2005, and Defendants did not file their objections to venue until May 30, 2007. As the Supreme Court said in *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960), "[a] defendant, properly served with process by a court having subject matter jurisdiction,

7

waives venue by failing seasonably to assert it, or even simply by making default." In this case, Defendants waived their objection to venue since they defaulted and failed to timely assert their objection.

Standard for Vacating a Default Judgment

We now turn to the real issue, whether the Court should exercise its discretion to vacate the default judgment. Both Plaintiff and Defendants agree that the standard in the Second Circuit for deciding a motion under Rule 60(b) to vacate a default judgment is based on "three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *Securities and Exchange Comm'n v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998), *cert. denied*, 525 U.S. 931 (1998). This, however, is where their agreement ends.

(i) Willful Default

Defendants assert that they did not "willfully" default in this Adversary Proceeding. They do not argue that their failure to answer was due to negligence or carelessness on their part, but rather because of an alleged inability to afford counsel. They have not, however, cited any authority that substantiates the proposition that a default is deemed "not willful" when the defaulting party simply asserts a lack of funds to retain counsel. Moreover, Defendants have also failed to explain their recent ability to afford counsel. Indeed, in the period of time since counsel was retained, two attorneys representing Defendants have flown to New York from Kentucky on two separate occasions to pursue their clients' interests. The first occasion was not to argue the motion to vacate but rather, as one of Defendants' attorneys phrased it, "just to show the Court

8

that we're alive and kicking." Counsel are indeed alive and kicking and are presumably charging for their services.

"To establish willfulness, plaintiff need not show bad faith on the part of his adversary, but must show more than mere negligence or carelessness." *RC Entm't v. Rodriquez*, 1999 WL 777903 at *2 (S.D.N.Y. Sept. 29, 1999). In *RC Entm't*, the court held that the default was willful since the defendants were properly served but did not timely answer. Similarly, the Defendants here were properly served but chose not to answer despite being granted numerous extensions and ample opportunities by the Court and Plaintiff's counsel to do so. Indeed, Defendants never sought to appear *pro se*. *See also S.E.C. v. Breed*, 2004 WL 1824358, at *8 (S.D.N.Y. Aug. 13, 2004), where the court found that defendants' failure to respond to a complaint after a court-imposed deadline is sufficient in and of itself to demonstrate willfulness.

In *Kingvision Pay-Per-View Ltd. v. Brito*, 2005 WL 1765710 at *2 (S.D.N.Y. July 25, 2005), the Court found a default to be "willful" where a defendant understood his obligation to answer the complaint and his potential liability but failed to answer until receiving notice that a default judgment was entered. Here, there is record evidence that Defendants understood their obligation to answer and were aware of the potential consequences of a failure to do so. In fact, in Defendants' Memo To Set Aside Default Judgment, Defendants recount how they brought an action against Brearly in the Kentucky Federal court to recover damages arising out of the Fight, and how they obtained a default judgment against Brearly for his failure to appear. That was apparently transpiring while the Defendants were defaulting here. This confirms knowledge and implies that Defendants may have decided to stay out of these

9

proceedings to get an advantage in their own case against Brearly. Defendants' deliberate and repeated failure to answer the Complaint was a willful default.

### (ii) Meritorious Defense

Defendants argue that they have meritorious defenses to the Complaint, citing *S.E.C. v. McNulty*, 137 F.3d at 738. Defendants claim that prior to the Fight, Brearly defaulted on its obligation to advance Defendants $2.7 million under agreed upon terms. As a result, Defendants claim, they were unable to provide Tyson with a letter of credit in the full amount of the purse to secure Tyson's commitment to the Fight. Subsequently, in an alleged effort to cure the contract breach, Defendants agreed to Brearly's proposal to assign a portion of Defendants' right to proceeds under the contract to be paid directly to Tyson. Brearly failed to make any payments to Tyson in accordance with this assignment and, Defendants argue, it is Brearly who is alone at fault.

The record is insufficient to come to any conclusions as to Defendants' alleged defenses.[1] Suffice it to say, as further discussed below, that the liability of the two moving Defendants is closely wrapped up with the liability of the other defendants against whom Plaintiff is continuing to prosecute this case. The existence of these other claims and the fact that the lawsuit will be continuing against other parties, together with the lack of substantial prejudice to Plaintiff, is the key to the resolution of this motion.

### (iii) Prejudice

As to the final factor, substantial prejudice, the Court sees no basis upon which the Plaintiff would be substantially prejudiced if the default judgment were vacated. "[D]elay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713

---

[1] Defendants additionally assert lack of jurisdiction and improper venue as meritorious defenses, and most of their discussion of this issue involves those assertions. For the reasons stated above, the Court does have jurisdiction and any objection to venue has been waived.

10

F.2d 907, 916 (2d Cir. 1983). Rather "something more is needed. For example, delay may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *State of New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (quoting 10A Wright, *et al., Fed. Practice & Procedure: Civil* § 2699, at 169 (3d ed. 1998)) (internal quotations omitted). Plaintiff does not assert that these factors are present in the instant case. Moreover, other factors weigh heavily in favor of vacating the default.

     First, on May 7, 2007, Plaintiff moved to amend the Complaint, and at a hearing held on June 6, 2007, the Court granted Plaintiff's motion to file the Amended Complaint. Plaintiff filed the Amended Complaint on June 20, 2007. Defendants argue that amending the Complaint automatically vacated the default judgment against them. There is authority that amending a complaint after a default has been entered is "contradictory" and that in order to amend, the default would first have to be vacated. *See Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991); *FDIC v. Weise Apartments-44457 Corp.*, 192 F.R.D. 100, 103 (S.D.N.Y. 2000). However, these cases are not directly on point in that they did not involve multiple defendants, as does the instant dispute. On the other hand, Plaintiff's motion to amend the Complaint does indicate that the case is only in a preliminary stage, that the Plaintiff in effect has to start over again against the new defendants, and that allowing the moving Defendants a chance to respond to the Amended Complaint would not be materially prejudicial.[2]

---

[2] Indeed, on August 3, 2007, after the motion to vacate had been argued and submitted for decision, the parties without explanation filed a stipulation that states that Defendants Straight Out and Webb may have to September 10, 2007, to answer the Amended Complaint.

11

More important, the presence of additional defendants against whom the litigation will be proceeding, under the circumstances of this matter, provides an adequate reason to vacate the default and allow the moving Defendants to participate.  In *Frow v. De La Vega*, 82 U.S. 552 (1872), the Supreme Court held that a default judgment may not be entered against one of several defendants where the theory of liability is joint liability or where the relief must, to be effective, be granted against each defendant.  It appears established that since the amendments to F. R. Civ. P. 54(b) in 1961, the rule in *Frow* has been limited to situations "where the liability of one defendant necessarily depends upon the liability of the others."  *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746-47, n.4 (2d Cir. 1976); *see also, In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1258 (7th Cir. 1980); 6 Moore, *Federal Practice*, ¶ 55.06 (2d ed. 1996).  On the other hand, even if a default judgment can be entered against less than all defendants to a single complaint, it has been held that damages ordinarily should not be established against the defaulting defendants until the liability of the other defendants has been determined, in order to avoid the possibility of inconsistent damage awards.  *In re Uranium Antitrust Litig.*, 617 F.2d at 1262; *Montcalm Pub. Corp. v. Ryan*, 807 F.Supp. 975, 977-78 (S.D.N.Y. 1992).

Applying these principles to the instant case, it seems clear that Count I of the Complaint asserts a separate cause of action in contract against the moving Defendants, not dependent on the other claims and therefore in theory a proper basis for a separate default judgment.  On the other hand, Count IV of the Complaint seeks a fraud judgment against one of the moving Defendants and another individual defendant; although the words "joint" or "joint and several" are not used, they are alleged to be liable for the

12

same damages.[3]  Moreover, all of the Counts seek in effect the same damages against all of the defendants, on different theories.  Therefore, the Complaint as drafted leaves open the possibility of inconsistent damage awards, and the defendants may have cross-claims against each other.  Although it would be theoretically possible to permit the moving Defendants to participate only at the damages stage of the trial, in light of the present preliminary posture of the case, it seems more appropriate to vacate the default and allow them to answer.

This result also seems consistent with the wording of F.R.Civ. P. 54(b), made applicable herein by Bankruptcy Rule 7054(a).  Rule 54(b) provides, in pertinent part, that when multiple defendants are named in a complaint, any "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties," unless the court expressly directs otherwise.  In the present case, the Complaint names other parties to the action in addition to the Defendants.  The default judgment does not contain the "Rule 54(b)" language directing its entry as a final, and accordingly it is still "subject to revision."

The Court recognizes that notwithstanding Rule 54(b), decisions of a court are "law of the case" and should only be revised under limited circumstances. *See Virgin Atl. Airways, LTD., v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *Official Comm. of Unsecured Creditors of Color Tile, Inc., v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).  Even where Rule 54(b) is applicable, "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways*, 956 F.2d at 1255, quoting 18 Wright *et al.*, *Federal Practice &*

---

[3] The Amended Complaint adds another individual defendant to this Count.

13

*Procedure* §4478 at 790.  None of these grounds is even remotely present in the instant case save for the prevention of injustice, and the moving Defendants can hardly claim they have been treated with "manifest injustice" in light of the opportunities they had to avoid defaulting.  Nevertheless, the three bases set forth above for revising a judgment are described only as the "major grounds," and the language of Rule 54(b) relating to the revision of a non–final judgment against less than all defendants supports the proposition that where multiple parties are involved, there are stronger reasons to vacate a default judgment than in a case without those factors. *Cf. Mow v. Republic of China*, 201 F.2d 195, 200 (D.C. Cir. 1952). The presence of other parties against whom the case is continuing—and the fact that the case is only in the preliminary stages—are the critical factors that justify vacating default judgment.

<u>Costs</u>

Notwithstanding that the default judgment should be vacated, the Plaintiff did suffer damage by virtue of the costs of dealing with and litigating this matter.  A court has discretion to award the non-defaulting party's attorneys fees and costs for obtaining the default judgment and responding to the motion to vacate.  Fed. R. Civ. P. 60(b) provides that the court may vacate a judgment "upon such terms as are just."  As the Court said in *Henderson v. Wishinski*, 1997 WL 83413, *3 (S.D.N.Y. Feb. 27, 1997), "[a] trial court may impose certain conditions on the parties in conjunction with the granting of a Rule 60(b) motion to remedy any prejudice that the non-defaulting party suffered as a result of the default and the granting of the motion. . . . Courts in this [Second] Circuit have liberally granted plaintiff's requests for attorney's fees and costs when vacating default judgments."  Here, Plaintiff's actions in dealing with Defendants' default were

14

entirely reasonable under the circumstances, and the defaults were willful and inexcusable. Accordingly, the Court awards Plaintiff his reasonable attorneys' fees and costs.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to vacate the default judgment. The Court also directs Defendants to reimburse Plaintiff for his reasonable attorney's fees and costs. Plaintiff may settle an order on 20 days' notice, vacating the default judgment and providing for payment of attorney's fees and costs. The notice of settlement should be accompanied by detailed time records, and Defendants may object to the amount of fees and costs requested. Alternatively, the question of attorney's fees and costs may be left until the end of the case.

Dated: New York, New York
       August 17, 2007

                                              _/s/ Allan L. Gropper_____
                                              UNITED STATES BANKRUPTCY JUDGE

15