J. Bruce Miller (Ky. Bar No. 47800)  Hearing Date: December 20, 2007 at 10:00 a.m.
Michael J. Kitchen (Ky. Bar No. 83945)  Objection Date: December 14, 2007 at 5:00 p.m.
**J. BRUCE MILLER LAW GROUP**
605 W. Main St.
Louisville, Kentucky 40202
Telephone: 502-587-0900
Facsimile:  502-587-9008

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

In re:
**MICHAEL G. TYSON, et.al.,**                         Chapter 11
                                                      Case No. 03-41900 (ALG)
                          **Debtors.**                (Jointly Administered)

---

**R. TODD NEILSON, Plan Administrator of the** )
**MGT Chapter 11 Liquidating Trust, on behalf** )
**of the MGT Chapter 11 Liquidating Trust and** )
**on behalf of Michael G. Tyson, an individual** )
                                                 )
                       **Plaintiff,**            )
vs.                                              )   Adv. No. 05-02210 (ALG)
                                                 )
**STRAIGHT-OUT PROMOTIONS, LLC,**                )
**a Kentucky Limited Liability Company;**        )
**CHRIS WEBB, an individual;**                   )
**BREARLY (INTERNATIONAL) LIMITED,**             )
**a Gibraltar corporation; FRANK WARREN,**       )
**an individual; SPORTS NETWORK, PLC, a**        )
**United Kingdom Corporation; SPORTS &**         )
**LEISURE, BOXING, LTD., a United Kingdon**      )
**corporation, and EDWARD SIMONS,**              )
**an individual**                                )
                       **Defendants**            )
                                                 )

---

**MEMORANDUM OF POINTS & AUTHORITIES
BY
STRAIGHT-OUT/WEBB DEFENDANTS & CROSS-CLAIM PLAINTIFFS
IN SUPPORT OF MOTION BY PLAINTIFF
TO AUTHORIZE ALTERNATIVE METHODS OF SERVICE
PURSUANT TO FED. R. CIV. PROC. 4(f)(3)
and
TO SUBSTITUTE XSN PLC FOR DEFENDANT SPORTS NETWORK PLC
PURSUANT TO FED. R. CIV. PROC. 25(c)**

1

Come the Defendants and Cross-Claim Plaintiffs, Straight-Out Promotions, LLC ("Straight-Out") and Chris Webb ("Webb") (collectively "Straight-Out/Webb Defendants"), by counsel, and offer their Memorandum of Points & Authorities ("Memorandum") in support the Motions of R. Todd Neilson, Plan Administrator of the MGT Chapter 11 Liquidating Trust, on behalf of the MGT Chapter 11 Liquidating Trust and on behalf of Michael G. Tyson, an Individual ("the Plaintiff") for

(i)     a Court Order pursuant to Fed. R. Civ. Proc. 4(f)(3), authorizing alternative means/methods for the service of process of the Court-authorized Amended Complaint upon certain of the Defendants and Cross-Claim Defendants in this action; and

(ii)    a Court Order pursuant to Fed.R.Civ.Proc. 25(c), substituting XSN PLC for Sports Network PLC as a Defendant in the Plaintiff's Amended Complaint.

## PROLOGUE

A half year ago the Straight-Out/Webb Defendants offered a Memorandum in support of their Motion to intervene in this litigation. Their Prologue to that Memorandum is applicable, again, to this Memorandum. It was stated, then, as follows:

> The world of professional boxing has historically been notorious. A strange world that on any given day is replete with excitement and drama, suspense and fraud -- a capitalistic nightmare, which even at best resembles Churchill's well-known description of Russia in his 1939 radio broadcast to England, to-wit:
>
> > "I cannot forecast to you the actions of Russia. It is a riddle, wrapped in a mystery, inside an enigma."
>
> The remainder of Churchill's quote is seldom noted, but of significance, nonetheless. The quote ends: "But perhaps there is a key – Russia's national interest."

The reason for the Plaintiff's Motion is to end the all-to-obvious gamesmanship of service avoidance extant among certain Defendants in this action, namely the United Kingdom

corporations Sports Network, PLC ("Sports Network") and Sports & Leisure, Boxing, Ltd. ("S&L Boxing") and the United Kingdom individual, Edward Simons ("Simons") and (as was stated in the previous Prologue's conclusion) to require ". . . all of the parties need to be before this Court in order to properly determine everyone's (national) interest and who defrauded whom amidst this enigma."

The Straight-Out/Webb Defendants agree with the Plaintiff's reasoning and offer an additional reason in support the Motions; namely, to facilitate the recovery of their $2.7+ million judgment that was rendered by the U.S. District Court in the Western District of Kentucky for the fraud perpetrated upon them by a fraudulently formed shell corporation (called Brearly) that was designed, formed and engineered by the whim and caprice of the Defendants Warren, Sports Network, S&L Boxing and Simons and to further determine, with judicial finality, whether the Plaintiff herein has any right to a portion of that judgment.

Lastly, this Memorandum by the Straight-Out/Webb Defendants is also designed to enlighten the Court as to the unnecessary delay that has been caused by the actions/inactions and quite deliberate avoidance of this proceeding by the Defendants Warren, Brearly, Sports Network, S&L Boxing and Simons. That gamesmanship must, now, end.

## I.
## STRAIGHT-OUT/WEBB DEFENDANTS' ARGUMENT
## IN SUPPORT OF PLAINTIFF'S MOTIONS

This Adversary Proceeding arises from the bankruptcy of Mike Tyson ("Tyson") and a series of business dealings surrounding a professional heavyweight boxing match ("the Fight") between Tyson and an Englishman, Danny Williams ("Williams"), that was authorized by orders of this Court, promoted by Straight-Out and took place on July 30, 2004 in Louisville, Kentucky.

3

A.   **Initial Pleadings before this Court and the Defendants' Warren & Brearly's "Catch me if you can" philosophy**

On or about June 15, 2005 the Plaintiff initiated this Adversary Proceeding by filing a Complaint (Doc. #1) against the Straight-Out/Webb Defendants, Frank J. Warren ("Warren" or "the Defendant Warren") an individual citizen of the United Kingdom and Brearly (International) Limited ("Brearly" or "the Defendant Brearly"), a Gibraltar Corporation.[1] Between the dates of June 17-23, 2005 counsel for the Plaintiff formally petitioned the Court's Clerk for a Request for Service Abroad of Judicial and Extrajudicial Documents upon the Defendant Warren in accordance with Article 5 The Hague Convention. (See: Doc. #s 4, 5)

Of interest to the Plaintiff's instant Motion and this supporting Memorandum by the Straight-Out/Webb Defendants is a document called the "Defence [sp] of Frank Warren." It was *personally signed* by Warren and filed with this Court (Doc. #10) on or about September 14, 2005. Like Brearly's Answer (See: Footnote 1) it's a *pro se* filing. For the convenience of the Court a copy is attached with this Memorandum as Appendix 1. The transmittal letter to the Clerk of this Court (also included in Appendix 1) is interesting in that Warren asserts (over his signature) that he has:

> ". . . not been personally served with these proceedings. Nevertheless, the contents of the complaint have been brought to my attention."

---

[1]   It is important to remind the Court that on October 11, 2005, Defendant Brearly filed a *pro se* Answer in this very proceeding. Thereafter, it refused to respond to Plaintiff's discovery, which necessitated this Court's October 23, 2006 Order (Doc. #35) compelling Brearly's discovery responses. As has been averred by Plaintiff's counsel (See: Doc. #42, p. 2), Defendant Brearly has never responded to these discovery requests – and as such has completely ignored this Court's authority.

It is also significant to note that on February 27, 2006 **this very same Brearly** was defaulted by the U.S. District Court of the Western District of Kentucky in the amount of $2.7 million plus pre and post-judgment interest for its failure to further litigate after losing its lawyer-driven challenge to the jurisdiction of the Kentucky federal court. -- **saying to that Court, as it has to this Court, "catch me if you can."**

4

The Defendant Warren's partial sentence, ". . . the contents of the complaint have been brought to my attention," is too cute by one-half – <u>and should serve to elucidate for the Court the attitude of the Defendant Warren (and his soon to be discussed other English/Gibraltar-based Defendants) toward the American judicial system – to-wit: it exists to be manipulated, whenever possible, to his advantage</u>.

While the Defendant Warren denies 'possessing' a properly served complaint, there is an admission that he's 'aware' of its contents. Obviously, he possessed an actual copy of the Complaint, because he personally prepared his Answer in a fashion that strictly follows the Complaint – numerically and *paragraph-by-paragraph*. Additionally, Warren's "Defence [sp] of Frank Warren" is attached because, it might be of interest for the Court to examine Warren's averments in his "Defence" and compare them to his sworn deposition testimony and that of the other English deponents.

So clearly, by the end of September 2005 – 27 months ago -- the Defendants Warren <u>and</u> Brearly were both aware of this litigation <u>as well as the federal court litigation in Kentucky</u> and were intent upon manipulating the federal judicial system they were subjected to in both jurisdictions.

Their 'party' had just begun.

**B.    Depositions of English Defendants and/or Participants in the Fraud (a/k/a "Catch me if you can Defendants")**

That manipulation of America's federal court system (previously described in §A and Footnote #1, hereinabove) worked effectively for the next fifteen (15) months. Very little happened in this case that challenged the interests of the Defendants Warren and Brearly. They were just 'skating along' while virtually all the attention was directed toward the Straight-Out/Webb Defendants (whom they had defrauded in Kentucky). Something even happened that

5

was quite useful to them and their manipulative instincts -- a default judgment was obtained by the Plaintiff in this proceeding against the Straight-Out/Webb Defendants. Now, there would be no way that the Straight-Out/Webb Defendants would ever appear in this Adversary Proceeding and, by doing so, tie together the fraud in Kentucky with Tyson's bankruptcy in New York. The Defendants Warren and Brearly were 'skating free.'

However, as the saying goes "The best laid plans of mice and men . . . . ," the Defendants Warren and Brearly had a rude awakening. After accomplishing that default judgment against the Straight-Out/Webb Defendants, the Plaintiff's attention turned to the other Defendants Warren and Brearly – because it became apparent that Straight-Out/Webb had no money and for the Plaintiff to receive judgment proceeds for the Tyson creditors, he had to 'jostle' the Englishmen.

It happened quickly -- as the intrepidly determined Plaintiff's counsel began to cause the 'jig' to be 'up' for the Defendant Warren by traveling to old London-town and deposing the Defendant Warren on February 7, 2007 (See: Doc. #43, Exhibit A) ("Warren Tr."). Additionally, on the same date the deposition of Stephen Heath ("Heath") Warren's 'running buddy' and the in-house counsel for the Defendant Sports Network (See: Doc. #43, Exhibit B) ("Heath Tr.") was taken. Lastly, the deposition of Peter Abbey ("Abbey"), the incorporator of Brearly (See: Doc. #43, Exhibit C) ("Abbey Tr.") was taken the next day -- on February 8, 2007. (Hereinafter collectively referred to as "the English Deponents" or "the English Depositions")

Earlier in this Memorandum it was noted that the Defendant Warren's *pro se* Answer (styled "Defence [sp] of Frank Warren) was included as Appendix 1. As was noted the purpose of its inclusion was to offer the Court the opportunity to compare his 'lack of knowledge and involvement' with the sworn testimony of a few of the others who were riding <u>with him</u> in the

6

bus. At this point it is important to briefly explore the information, *inter alia*, that was elicited from those English Depositions.

From the deposition of Peter Abbey, the 'owner' (in quotes) of the Defendant Brearly it was learned that

1. the Defendant Brearly was nothing but a shell corporation; and it

    a. was formed as a "special investment vehicle" created at the behest of Edward Simons for the benefit of Warren's company, Sports Network, and formalized by Steve Heath, Warren and Sports Network's in house counsel; and that it

    b. has minimal capitalization; and that it

    c. has only 2 officers, Abbey and a member of the Gibraltar law firm of Marrache & Co.; and that it

    d. has no bank account (See. Doc. #43, Exhibit C, Abbey Tr. at 12); and that it

    e. has no offices, employees, accountants or staff and has filed no tax returns (Abbey Tr. at 21 and Heath Tr. at 23-24) <u>and</u>

    f. <u>most astonishingly, Abbey testified he knew nothing about the Fight in Louisville, even though his company, Brearly, shared the international television rights with the Defendant, Straight-Out and that he had no involvement with the negotiation for the international rights;</u> and

    g. further, amazingly, the lawyer (Judd Bernstein) who represented Brearly in the Kentucky federal court was hired by Simons and paid through Brearly – and Brearly's officer <u>knew nothing about it</u>. (Abbey Tr. at 22).

2. The deponent Steven Heath (<u>the former in-house counsel for the Defendant Sports Network</u>) <u>admitted</u> that:

    a. he kept all accounting records for Brearly regarding the Tyson/Williams prizefight (Abbey Tr. at 17); and that

7

b.  he was responsible for collecting all revenues and paying all expenses involving the prizefight (Abbey Tr. at 24); and that

c.  Brearly entered into a distribution agreement with Straight-Out entitling Brearly to a portion of the international distribution rights on the prizefight (Heath Tr. at 38); and that

d.  at all relevant times the Defendant Simons was the Chief Executive of Sports & Leisure (Heath Tr. at 12); and he

e.  admitted that the Defendant Warren and the Defendant Sports & Leisure <u>owned</u> Sports Network (Heath Tr. at 12); and that

f.  the right to distribute the telecast of the prizefight in the United Kingdom (the UK Broadcast Right) was transferred from the Defendant Brearly to the Defendant Sports Network without any consideration (Heath Tr. at 54-55); and that

g.  at the time of the prizefight he was in-house counsel for Sports Network and performed legal work relating to the provision of services between Sports Network and Straight-Out which, in turn, allowed Williams to participate in the prizefight (Heath Tr. at 11, 40); and that

h.  although he wasn't hired by Brearly, Heath performed legal work for Brearly in connection with the prizefight. (Heath Tr. at 17); and that

i.  he received instructions regarding his legal work for Brearly from the Defendant Simons and in that respect he was directed by the Defendant Simons to perform work for Brearly in his capacity as house counsel for Sports Network (Heath Tr. at 17, 19); and that

j.  the Defendant Simons held himself out to Heath as the party authorized to be the 'voice' of Brearly with respect to the documentation of Brearly's purchase of the international distribution rights for the fight (Heath Tr. at 22); and that

k.  he understood that the Defendant Simons was negotiating on behalf of Brearly directly with Webb on behalf of Straight-Out (Heath Tr. at 45); and that

l.  the Defendant Simons did not receive instructions from anyone

8

                in connection with the documentation of Brearly's distribution agreement with Straight-Out. (Heath Tr. at 76); and that

        m.      the Defendant Simons made no distinction between the Defendants Brearly and Sports & Leisure and that the Defendant Simons infomed Heath that the Defendant Sports & Leisure was going to acquire worldwide broadcast rights for the prizefight; when, in fact, Brearly acquired them. (Heath Tr. at 31)

3.      The Defendant and deponent Warren <u>admitted</u> that:

        a.      At the time of the prizefight, the Defendant Simons had signing authority with respect to Sports Network (Warren Tr. at 36-37); and that

        b.      the right to distribute the telecast of the prizefight in the United Kingdom (the UK Broadcast Right) was transferred from the Defendant Brearly to the Defendant Sports Network without any consideration (Warren Tr. at 37); and that

        c.      to the extent the UK Broadcast Right transfer was negotiated, the Defendant Simons negotiated on behalf of Sports Network. (Warren Tr. at 25); and that

        d.      the Defendant Simons and himself (the Defendant Warren) controlled the Defendant Sports Network (Warren Tr. at 8-9); and that

        e.      The Defendant Sports Network, through various owned and/or controlled entities held a portion of the rights to promote prizefights featuring Williams (Warren Tr. at 16); and that

        f.      In addition to the Defendant Sports Network earning money from the receipt of the transfer of the UK Broadcast rights it would also earn additional revenues from subsequent Williams fights (assuming Williams won the fight [as he did]) (Warren Tr. at 30-31)

When Defendant Warren's personally drafted Answer is juxtaposed with this sworn testimony of his compatriots one's mouth has a tendency to become ajar in amazement.

        Alan J. Kornfeld, Plaintiff's counsel, conducted the afore-noted depositions. They were a marvelously structured and organized set of depositions and the sworn testimony gained

9

therefrom was devastating to the Defendants Warren and Brearly and the soon-to-be new English Defendants, who were quickly brought into this case by the Plaintiff's Amended Complaint (and whom are deliberately avoiding service, now). Mr. Kornfeld in his Declaration before the Court has previously disclosed all this. (See: Doc. #42)

However, the Defendants Sports Network, Sports & Leisure and Edward Simons (hereinafter collectively referenced as "The Warren Conglomerate" or just "The Conglomerate") would have this Court believe that they are unable to be served with process through The Hague procedures even though Warren and Brearly have been Defendants in this litigation since mid-summer of 2005 <u>and</u> even though Warren's counsel in this proceeding has led Plaintiff's counsel to believe that he <u>even might represent these new English Defendants, if they're ever properly served</u>.

As Plaintiff's counsel's Declaration avers, this little minuet with Warren's counsel continued for months and even included a representation by him to the Court, for which there was a subsequent written apology. But unfortunately what it all accomplished was another quarter of a year delay in this proceeding. Eventually, months turn into years.

C.   **Chronology of Events: Between the English Defendants' Depositions and the Present.**

The Plaintiff's expertly crafted deposition of the English Defendants served to 'open the curtain' exposing an enormous fraud that had been perpetrated by The Warren Conglomerate upon Straight-Out and Webb. But, even after those damaging depositions, The Conglomerate had to be smugly confident of their ability to prevent <u>everything from being tied together</u>. Why? For the simple reason that at the time of the English Depositions (February 2007) it was apparent that Straight-Out and Webb were not pursuing collection of their $2.7+ million Kentucky federal judgment and (presumably) wouldn't intervene in this Adversary Proceeding because the

10

Plaintiff had obtained a $1.9 million judgment against them.  Indeed, it was a cozy cocoon in which to quietly enjoy the ill-gotten fruits of a fraud -- as it appeared to The Warren Conglomerate that Straight-Out and Webb might be 'sleeping with the fishes.'

But, along with the excitement of gamesmanship and deceit inevitably follows some concern and a little unease. That was true with The Warren Conglomerate, as well, since the February 7-8 English Depositions had produced a boat-load of facts that tied The Conglomerate together with the fraud they concocted surrounding the fight in Kentucky. Now, with the bushel basket removed from their candle, revealing the seedy facts surrounding the Tyson/Williams fight in Kentucky there remained the gnawing question – What to do if the 'word' spreads too far (like to Kentucky)?

The answer -- prophylactic action. But unfortunately for them, what The Warren Conglomerate did has now been uncovered by the intrepid Plaintiff's counsel to be <u>little more than a ruse upon this Court</u> and is fully reported to this Court in its Motion and its counsel's Declaration. On or about March 2, 2007 – not even a month <u>after</u> the February English Depositions a proxy notice was issued in foggy London-town by the Defendant Sports Network PLC announcing (i) a spin off of Sports Network PLC into a new subsidiary of Yellbond Limited, which was another company controlled by the Defendants Warren and Simons and (ii) the change of Sports Network PLC's name to XSN PLC and (iii) the cancellation of Warren's and Simons' stock ownership in Sports Network PLC. (See: Plaintiff's Motion at pp.5-6). (My, wasn't that clever!!!)  It was no longer sufficient to rely on a sham shell Gibraltar corporation to create distance between their Kentucky fraud and the American court system. They sought more prophylactic protection by creating another corporate layer between themselves and their fraud in

11

Kentucky. But, the sad reality for them was that, yet, another 'plan of mice and men' was about to be rent asunder.

As the intrepid Plaintiff's counsel has averred in her Declaration, the Dunn & Bradstreet Report for Yellbound reveals its address to be the home address of the Defendant Simons and the "Business Trading Address" for XSN PLC to be <u>Simons' home address</u>, as well! But there's more – as is disclosed at page 8 in the Declaration of Beth Levine, Footnote #4, Yellbond's registered address is identical to that of the Defendant Sports & Leisure and Messrs/Defendants Warren and Simons are both directors of Yellbond.

There's more. In the United Kingdom, as in the U.S.A., there are business regulatory filing requirements and in mid-June of 2007 there was an announcement about the Sports Network Group PLC 'thing' (See: Appendix 2). Among other interesting tidbits reflecting the 'tie-in' amongst The Warren Conglomerate are found:

> • at p. 4 of Appendix 2 there's mention of 138,546,588 <u>shares</u> in XSN PLC being owned by the Defendant Warren, his three children (George, Faye and Henry), the Defendant Simons (and other Simons' named Gavin and Francis), as well as the "Edward Simons Pensions Scheme" ["Scheme" – what an apt description!]

And yet another surprisingly worded comment:

> • at p. 5 of Appendix 2 -- "The above arrangements had the effect of disposing of the boxing business subsidiaries from the Company to a private company controlled by certain former directors of the Company, in return for the repayment of inter-company debt of 1.15 m pounds and the cancellation of the shareholding specified above.

Therefore, the Defendants Sports Network, Sports & Leisure, and XSN PLC (which the Plaintiff also moves to include as a Defendant in this proceeding) are <u>all 'peas in the same pod' that was operated, controlled and primarily owned by the Defendants Warren and Simons</u> and their families.

12

And now for the last ironical twist -- at the same time, during the months of May-June 2007 and back in the United States the last thing that The Warren Conglomerate ever thought would occur – did – as the Straight-Out/Webb Defendants intervened in the Plaintiff's Adversary Proceeding, swiftly proceeded to have the default judgment expunged and filed their Cross-Claims against the Warren Conglomerate Defendants in this very proceeding.

So now, the jig was really up. The facts had been discovered in a series of English Depositons that irrevocably tied together in a Gordian Knot the Defendants Warren, Sports Network and Sports & Leisure to Brearly and it was all proven by the deposition of Sports Network's house counsel, Steven Heath and Warren's business partner, Edward Simons. The Kentucky federal court plaintiffs, Straight-Out and Webb, who had a $2.7+ million judgment had now intervened in the New York proceeding and obviously intended to utilize those depositions in support of their cross claims against the English Defendants in the Tyson Adversary Proceeding. And the next step was now as obvious as the noses on the English Defendant's faces – a piercing of everyone's corporate veil.

Sort of brings to mind a childhood recollection of what the actor, William Bendix, used to say as he portrayed Chester Riley in the classic 1950's sit-com "Life of Riley" – "What a revoltin' development [for The Warren Conglomerate] this turned out to be!"

**D.     The Warren Conglomerate's continuing financial interest in pursuing multi-million dollar business opportunities in America**

Literary observers have written that among the most audacious of our four-legged pets called 'dogs' is the 'pug' species. Must be where the word 'pugnacious' was derived.

That being the case -- with the audacity of a pug dog, The Warren Conglomerate continues its capitalistic use of the American economic system, whilst toying with and

13

manipulating the American judicial system. The examples are current and on-going, as we write and speak.

As late as Friday evening November 2, 2007, Home Box Office ("HBO") televised to its American audience (understood to be in excess of 40 million subscribers [with world-wide subscribers in over 50 nations]) the unification of the world's super middleweight championship prizefight from Millennium Stadium in Cardiff, Wales between the World Boxing Organization champion Joe Calzaghe (pronounced Cal-zaki) and the World Boxing Council and World Boxing Association champion Michael Kessler. Of interest here is the fact that the logo from one of our 'Eluding Defendants,' Sports Network, was emblazoned all over the boxing ring (supposedly a half year *after* it was spun-off and renamed XSN PLC) and that *after* the prizefight the Defendant Warren, the winner Calzaghe's promoter, was heard challenging and demanding that HBO negotiate for the television rights to a big money fight between Calzaghe and Bernard Hopkins the number one contender for the world light-heavyweight championship.

The import being – while The Warren Conglomerate ostensibly knows nothing about the prizefight at issue in this proceeding or <u>even the existence of this proceeding, itself</u>, The Conglomerate members continue working together to gain significant American revenue streams for other prizefights because as the boxer Hopkins stated ". . . they have to get that stamp of approval over here in America."

It doesn't stop there, though.

On December 10, 2007, the Defendant Warren continued his 'hustling' of the American boxing market by stating:

> "Both boxers (Calzahge/Hopkins) want the fight, I want the fight, the fans want the fight and HBO wants the fight, so there's no reason for it not to happen" <u>the Sports Network boss stated.</u>
> [Emphasis supplied] See: Appendix 3

That's right, the leading English boxing website referred to the Defendant Warren as the "Sports Network boss."

So, there you have it. A masterful scheme that was front-end loaded years ago and continues to be re-loaded and revised to concomitantly facilitate the manipulation of the American judicial system <u>to avoid legal responsibility for its actions/inactions in America</u> and the utilization of the American economic system <u>to maximize the breadth and depth of one's pocketbook</u> – all for The Conglomerate's personal business advantage.

As the Conglomerate will learn, that doesn't work in America. A person, for more powerful than The Warren Conglomerate, tried such duplicity years ago – and, after an unnecessarily long national nightmare, he was impeached and driven from the Oval Office.

**C.    Summary**

With all due respect to the Defendant Warren and the other 'unserved' English Defendants in The Warren Conglomerate, to think that they don't know of this litigation or to think they are doing anything but 'deliberately' avoiding service of process requires one to be totally 'over-served' with Kentucky's finest (90 proof bourbon whiskey).

They all know about it and have consciously determined to do everything within their power to inhibit America's federal judicial system from factually exploring their fraudulent actions perpetrated in Louisville, Kentucky; and, yet, at the same time doing everything within their power to maximize their revenue streams by utilizing America's economic system and its huge communications media to feather their individual and collective nests with millions of American dollars.

But, for The Warren Conglomerate, the 'jig is up," when this Court grants the Plaintiff's Motion for Alternative Service.

15

The one suggestion that the Straight-Out/Webb Defendants would make involves the Plaintiff's Motion to Substitute XSN PLC for the Defendant Sports Network, PLC. Rather than 'substituting' one for the other, it might be more expeditious simply to add XSN PLC, because just as soon as XSN PLC is substituted, The Warren Conglomerate's next move would be to 'reverse' spin-off XSN PLC in favor of Sports Network, or in other words – undo the previously 'done deal' – and we're right back where we started!!

Respectfully submitted,

J. BRUCE MILLER LAW GROUP
605 W. Main St.
Louisville, Kentucky 40202
Ph. 502-587-0900
Fx. 502-587-9008


_____/s/ J. Bruce Miller_____
J. Bruce Miller (Ky. Bar No. 47800)
Michael J. Kitchen (Ky. Bar No. 83945)
*Pro Hac Vice Counsel for*
*Straight-Out Promotions, LLC and*
*Chris Webb, Individual*