UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                              :          Chapter 11
                                                    :
MICHAEL G. TYSON, et al.,                           :          Case No. 03-41900 (ALG)
                                                    :
                                                    :
                                                    :
            Debtors.                                :          (Jointly Administered)
-------------------------------------------------------------x
R. TODD NEILSON, Plan Administrator of the          :
MGT Chapter 11 Liquidating Trust, on behalf         :
of the MGT Chapter 11 Liquidating Trust and on      :
behalf of Michael G. Tyson, an individual,          :
            Plaintiff,                              :          Adv. No. 05-02210 (ALG)
v.                                                  :
                                                    :
STRAIGHT-OUT PROMOTIONS, LLC,                       :
a Kentucky limited liability company; CHRIS         :
WEBB, an individual; BREARLY                        :
(INTERNATIONAL) LIMITED, a Gibraltar                :
corporation; FRANK WARREN, an individual;           :
SPORTS NETWORK, PLC, a United Kingdom               :
corporation; SPORTS & LEISURE, BOXING,              :
LTD., a United Kingdom corporation, and             :
EDWARD SIMONS, an individual,                       :
            Defendants.                             :
                                                    :
STRAIGHT-OUT PROMOTIONS, LLC, a                     :
Kentucky limited liability company and              :
CHRIS WEBB, an individual ,                         :
            Cross-Claim Plaintiffs,                 :
v.                                                  :
                                                    :
BREARLY (INTERNATIONAL) LIMITED, a                  :
Gibraltar corporation; FRANK WARREN, an             :
individual; SPORTS NETWORK, PLC, a                  :
United Kingdom corporation; MARINETRACK             :
HOLDINGS, PLC, a United Kingdom                     :
corporation; SPORTS & LEISURE, BOXING,              :
LTD., a United Kingdom corporation, and             :
EDWARD SIMONS, an individual,                       :
            Cross-Claim Defendants.                 :
-------------------------------------------------------------x

## MEMORANDUM OF OPINION ON REMAND

A P P E A R A N C E S:

**PACHULSKI, STANG, ZIEHL & JONES LLP**
*Attorneys for Plaintiff R. Todd Neilson*
 By:    Robert J. Feinstein
        Alan J. Kornfeld
        Beth E. Levine
780 Third Ave., 36th Floor
New York, NY 10017

**J. BRUCE MILLER LAW GROUP**
*Attorneys for Defendants Straight-Out Promotions, LLC and Chris Webb*
 By:    J. Bruce Miller
605 W. Main St.
Louisville, Kentucky 40202

**SHERMAN, CITRON & KARASIK, P.C.**
*Attorneys for Defendant Frank Warren*
 By:    Howard Karasik
605 Third Ave., 25th Floor
New York, NY 100158

**PROFETA & EISENSTEIN**
*Attorneys for Defendant Edward Simons*
 By:    Jethro M. Eisenstein
14 Wall St., 22nd Floor
New York, NY 10005

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

On remand from the District Court, *In re Michael G. Tyson*, 433 B.R. 68 (S.D.N.Y. 2010), we consider the following issues: (i) whether R. Todd Neilson acting on behalf of the MGT Chapter 11 Liquidating Trust and former debtor Michael G. Tyson ("Tyson"),[1] has established a claim of fraudulent inducement against Frank Warren ("Warren") and Edward Simons ("Simons" and together with Warren, the "UK Defendants"); (ii) reconsideration of the post-trial motions of defendants Straight-Out Promotions, LLC ("Straight-Out") and Chris Webb

---

[1] Tyson is also referred to as "Plaintiff" throughout this decision, as in previous decisions.

("Webb" and together with Straight-Out, the "Kentucky Defendants") to amend their pleadings pursuant to FED. R. CIV. P. 15(b)(2) and 54 to include a cross-claim for fraudulent inducement against the UK Defendants; (iii) whether liability on the part of the UK Defendants can be based on a default judgment obtained against Brearly (International) Ltd. ("Brearly") in Kentucky Federal Court on December 16, 2008 (the "Kentucky Default Judgment"); and (iv) whether and to what extent, Warren should recover attorney's fees premised on a successful defense of veil-piercing claims that the District Court found are not sustainable under English law.

## FACTS

The relevant facts of this case have been addressed in the decision of the District Court cited above and in this Court's decision in *Neilson v. Straight-Out Promotions, LLC (In re Tyson)*, 412 B.R. 623 (Bankr. S.D.N.Y. 2009). The parties have agreed to rest on the existing record, and this Court decides the above-described issues based on the facts established at the trial held on March 23-27, 2009. There has been further briefing, which was argued at a hearing on February 10, 2011 (the "Hearing"). We assume familiarity with the existing record and do not repeat the facts herein.

## DISCUSSION

Plaintiff's amended complaint (Dkt. No. 57) contained (i) a breach of contract claim against the Kentucky Defendants; (ii) a breach of contract claim against Brearly and, based on piercing the corporate veil, against the UK Defendants, Sports Network PLC ("Sports Network"), Sports & Leisure, Boxing Ltd. (collectively, the "Sports Network Defendants"); (iii) an unjust enrichment claim against Brearly, Sports Network, and the UK Defendants; and (iv) a fraud claim against Webb and the UK Defendants. Plaintiff received a judgment in his favor against Straight-Out for $1.9 million, which Straight-Out did not contest in the first instance or

3

on appeal. Plaintiff also received a judgment in his favor against the Sports Network Defendants, based primarily on a piercing of Brearly's corporate veil, but the District Court reversed. Plaintiff subsequently withdrew his unjust enrichment claim. Therefore, the only claim of Plaintiff that remains at issue on remand is his fraud claim against the UK Defendants.[2]

The Kentucky Defendants, in turn, brought a cross-claim against Brearly and the Sports Network Defendants for, among other things, a judgment that such parties were required to indemnify the Kentucky Defendants for any amounts that were found to be owed by them to Tyson. This claim was based on a Distribution Agreement and a Notice of Irrevocable Authority and Assignment (the "Assignment Agreement").[3] In our previous decision, this Court found that Straight-Out had sustained its breach of contract claim against Brearly.[4] The Kentucky Defendants did not allege fraud against the UK Defendants in their cross-claim, but attempted to add such claims by way of a motion to amend pursuant to FED. R. CIV. P. 15(b)(2) and 54.

1. **Election of Remedies**

We first consider the fraudulent inducement claim that Plaintiff asserted against the UK Defendants in his amended complaint and that the Kentucky Defendants seek to assert. In this Court's prior decision, we concluded that "the only damages that Plaintiff could assert from [his] fraud claim are the same contract damages that are being imposed on the UK Defendants by

---

[2] Plaintiff's fraud claim against Webb was also dismissed on the merits, and this determination is not at issue. Brearly defaulted in this Court as it did in Kentucky. The Clerk of the Court entered a default against Brearly on January 23, 2008. Plaintiff filed a motion for default judgment on February 28, 2008, but withdrew the motion shortly thereafter. Since then no party has moved for entry of a judgment against Brearly.

[3] Pursuant to the Assignment Agreement, Brearly agreed to pay directly to Tyson $1.4 million (minus certain expenses) of the $2.7 million "Advance Minimum Guarantee" that it owed to Straight-Out for the right to broadcast the Tyson-Danny Williams fight (the "Fight") in certain international markets. Notwithstanding the Assignment Agreement, Straight-Out remained liable to Tyson in the event of non-payment by Brearly.

[4] Straight-Out, however, was not entitled to a judgment on this claim because it had assigned to Tyson and Showtime its right to receive the first $2.7 million in revenue from the Fight, and there was no evidence that the Fight produced revenue in excess of this amount. The breach of contract claim was sustained even though Straight-Out and Brearly never fully executed the Distribution Agreement. The Kentucky Court had found that an agreement had been reached and an implied contract formed despite the failure to fully document that agreement in writing. This Court relied on the Kentucky Court's finding, based on Kentucky law, in this regard.

4

virtue of the piercing of Brearly's corporate veil." *In re Tyson*, 412 B.R. at 645. Because we awarded Plaintiff damages based on his veil-piercing theory, we declined to rule in the alternative on whether Tyson could recover on his fraudulent inducement claim. Our previous determination having been set aside, we have been directed to consider the fraudulent inducement issue anew. There is no dispute that Kentucky law applies to the fraudulent inducement claims.

Kentucky courts have almost uniformly held that if a party misrepresents its future intention to perform and such performance is promised in the form of a contract, failure to perform such promise gives rise to an action for breach of contract, not an action for fraud. *See Brooks v. Williams*, 268 S.W.2d 650, 652 (Ky. 1954). Moreover, the near universal view in Kentucky, as elsewhere, is that a party claiming fraudulent inducement normally "has an option either to disaffirm the contract and seek its recision [sic] or to affirm the contract and seek his remedy by an action for damages." *Sanford Const. Co. v. S & H Contractors, Inc.*, 443 S.W.2d 227, 236 (Ky. 1969); *see also, Sallee v. Fort Knox Nat'l Bank (In re Sallee)*, 286 F.3d 878, 900 (6th Cir. 2002) (applying Kentucky law). Similarly, in *Hanson v. American Nat'l Bank & Trust Co.*, 865 S.W.2d 302, 306 (Ky. 1993), *rev'd on other grounds*, 509 U.S. 918 (1993), the Kentucky Court said, "Where a fraud has been perpetrated to induce a party to enter into a contract, the injured party may elect to affirm the contract and recover damages in tort for the fraud or disaffirm the contract and recover the consideration with which he has parted." More recently, in *Dodd v. Dyke Indus., Inc.*, Civil Action No. 04-226 (JGH), 2008 WL 1884081, at *4 (W.D. Ky. 2008), the Court explained that the "doctrine of election of remedies . . . means that when a person has at his disposal two modes of redress, which are contradictory and inconsistent with each other, his deliberate and settled choice and pursuit of one will preclude his later choice

5

and pursuit of the other." If the contract is affirmed, the election is normally irrevocable and the fraud is effectively condoned. *Id.* Thus, Kentucky law generally prohibits a party from bringing both a contract claim and a claim for fraudulent inducement in the same lawsuit. This is consistent with law in other jurisdictions. *Restatement (Second) of Torts* § 525.

The Kentucky Defendants argue that the authority in Kentucky is not uniform, citing one unreported case in which the Kentucky District Court found that an election of remedies is not required in every instance. In *Corporex Realty & Inv. Corp. v. Raymond James & Assoc., Inc.*, Civil Action No. 98-14 (E.D. Ky June 19, 2000), the Court on a motion for entry of Trial Order, Verdict and Judgment explicitly declined to follow *Hanson*, stating:

> this court does not believe such an election [between bringing a breach of contract claim and a fraud claim] would be required in every case. It would make no sense to require it here since the jury, having found the fraud consisted of entering into the contract with an intent not to perform it, the damages for breach of contract and the compensatory element of the fraud damages would be identical. Therefore, there was no need for an election and instructing on one would have been confusing.

However, *Corporex* is distinguishable because of the Court's concern regarding jury confusion, and because it is obvious that the parties proceeded to trial on a dual theory.

The Court is persuaded that the majority Kentucky view is the correct one to apply in the case at bar. Not only did the parties elect a remedy when they sued under the contract, but Tyson and the Kentucky Defendants obviously elected that remedy because they were seeking damages based on the contract. It will be recalled that Brearly—or the UK Defendants through Brearly— agreed to administer certain of the international sales for the Fight. Although allegations were made that the UK Defendants had failed to account for substantial proceeds of the international

6

pay-per-view sales, the existence of any such damages was unproven at trial.[5] In addition, there was no allegation that the UK Defendants had failed to make reasonable efforts to sell the international rights, or that they had subverted the Fight, or caused Tyson to lose to his opponent. The basis for the recovery sought was Brearly's failure to pay the "Advance Minimum Guarantee," as provided for in the Distribution Agreement and ratified in the Assignment Agreement. It is for good reason that Tyson and the Kentucky Defendants pursued a suit for breach of contract, but such choice is not without consequences. Having affirmed the contract by electing to sue on a failure to pay the "guaranteed" contractual amounts, the parties may not now choose to maintain an action for fraudulent inducement.

Furthermore, even assuming *arguendo* that Kentucky law would allow Tyson or the Kentucky Defendants to maintain an action for fraudulent inducement despite having affirmed the contract, neither Tyson nor the Kentucky Defendants can sustain a fraud claim under Kentucky law on the instant record.

**2. Fraud Claims**

Under Kentucky law, a claim for fraudulent inducement is based on proof of fraud, which in turn requires proof of the following six elements by clear and convincing evidence: "(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *In re Sallee*, 286 F.3d at 895-96; *accord Flegles, Inc. v. Truserv Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). Plaintiff's

---

[5] The Kentucky Defendants went to great lengths at trial to attempt to establish that the proceeds of the Fight exceeded the figures claimed by the UK Defendants, but were unable to do so. *See* the Findings in *In re Tyson*, 412 B.R. at 637-38, which were undisturbed on appeal. The UK Defendants have continued to withhold from Tyson $135,795 in proceeds from the international sales, but no party has pursued this sum. Tyson and the Kentucky Defendants do not refer to it in their papers.

reliance must be reasonable. *See Flegles, Inc.,* 289 S.W.3d at 549. Warren asserts that he did not make and was not responsible for others having made any representations and that any alleged representations were not material (the first factor); that he did not know that Tyson would rely on any alleged material misrepresentations instead of conducting his own due diligence (the fourth factor); that Tyson has failed to establish reasonable reliance on such alleged misrepresentations (the fifth factor); and therefore that the record fails to establish clear and convincing evidence of fraud. *See Warren's Reply* at 10-29 (Dkt. No. 229). Simons restricted himself to the contention that Tyson failed to establish (i) that he relied on the UK Defendants' alleged misrepresentations and (ii) that any claimed reliance was either reasonable or justifiable (the fifth factor). *See Simons' Memorandum of Law* at 11-12 (Dkt. No. 231). The remaining factors are uncontested. We consider the contested factors hereafter.

  A. **Material Misrepresentations**

Tyson contends that Warren, primarily through Simons and Stephen Heath ("Heath"), a Sports Network attorney, made multiple material, affirmative misrepresentations. The alleged affirmative misrepresentations include: "(i) that all international revenues relating to the Fight were being funneled through Brearly; (ii) that Brearly would pay the $2.7 million agreed to in the Distribution Agreement and acknowledged in the Assignment; (iii) that Brearly was a Sports Network entity; (iv) that the only reason the foreign distribution rights relating to the Fight were being passed through Brearly was for tax purposes; and (v) that Brearly had been used by Sports Network for these purposes before." *Plaintiff's Memorandum of Law* at 11-12 (Dkt. No. 226); *Plaintiff's Reply* at 11 (Dkt. No. 234). Clearly, the most important representation is that Brearly would pay the $2.7 million "Advance Minimum Guarantee."

8

Under Kentucky law, an actionable affirmative misrepresentation "must be related to a past or present material fact" and must be something more than a "mere statement of opinion or prediction." *Flegles, Inc.*, 289 S.W.3d at 549. However, even a statement of opinion or prediction can be actionable if the "declarant falsely represents his opinion of a future happening . . . or when a promise is made with the present intent of a future breach, or with no intention of carrying out the promise or declaration of future expectations." *Edward Brockhaus & Co. v. Gilson*, 92 S.W.2d 830, 835-36 (Ky. 1936); *accord J.S. McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170, 172 (Ky. 1955).

There is evidence that the UK Defendants never intended that Brearly would perform its obligations to pay the Advance Minimum Guarantee. Indeed, on the day after the Fight, Brearly essentially repudiated its obligations under the Assignment Agreement.[6] Based on this repudiation and the record as a whole, we find that there was never an intention to have Brearly pay the Advance Minimum Guarantee. Since Brearly only acted through the UK Defendants, there is also clear and convincing evidence that the UK Defendants were responsible for everything Brearly did or failed to do.[7]

---

[6] This repudiation is evidenced by, among other things, an email sent by Vanessa Pitaluga to, among others, Stephen Espinosa ("Espinosa") on August 2, 2004 wherein Brearly "reserve[d] its position with regard to the enforceability" of its obligations to Straight-Out and appears to have disclaimed liability on the basis that it had not authorized certain transactions. *See* Plaintiff's Trial Exh. P-15. Vanessa Pitaluga was an attorney with Marrache & Co., which served as attorneys for Brearly during the relevant time period. Espinosa was Tyson's attorney during the negotiations leading up to the Fight.

[7] Warren has alleged that, even if material misrepresentations were made, Tyson has not proved by clear and convincing evidence that Warren or Sports Network is responsible for such misrepresentations. On the basis of the record as a whole and particularly the incredible and conflicting testimony provided by the UK Defendants, we find that Simons lacked authority to commit Sports Network to any obligations without Warren's approval, and that Simons would not have embarked on the Brearly venture without Warren's express approval. *See* March 25, 2009 Trial Tr. at 137. Warren's testimony at trial that he was unaware that Simons was acting on behalf of Brearly and that he was unaware that Simons had instructed Heath to act on behalf of Brearly was not credible. *See Id.* at 102, 150–51. It defies belief that Warren, who claimed that he closely supervised and regularly met with his limited staff of between ten to twelve persons, was unaware that 25 – 30% of his associates or employees were expending considerable amounts of time on behalf of Brearly. *Id.* at 167-69; March 26, 2009 Trial Tr. at 118-19. This is particularly true because Warren and Sports Network received direct and tangible benefit from Sports Network's involvement with the Fight, including obtaining the English television rights to the Fight (which Warren personally

9

**B. Reasonable Reliance**

Despite the foregoing, the claims of both Tyson and the Kentucky Defendants founder on the requirement that they reasonably relied on a promise that Brearly would pay the Advance Minimum Guarantee and that the UK Defendants would be responsible. Under Kentucky law, "a claimant may establish detrimental reliance in a fraud action when he acts or fails to act due to fraudulent misrepresentations." *Sanford Construction Co.*, 443 S.W.2d at 232. Nevertheless, reliance must be reasonable, and in order to demonstrate reasonable reliance, a party must prove that he exercised ordinary care. *See Abbey v. 3F Therapeutics, Inc.*, Case No. 06-409, 2011 U.S. Dist. LEXIS 17299, *21-22 (S.D.N.Y. Feb. 22, 2011) (plaintiff will not be heard to complain when it is plaintiff's "own evident lack of due care which is responsible for his predicament"). The extent of a plaintiff's obligation "depends on the relative sophistication of the parties, the nature of the representations, and the ease of conducting an investigation." *In re Carr*, 49 B.R. 208, 211 (Bankr. W.D. Ky. 1985). The plaintiff's "knowledge and experience" is also relevant to determining whether plaintiff's reliance was reasonable. *Ky. Laborers Dist. Council Health and Welfare Trust Fund v. Hill & Knowlton, Inc.*, 24 F.Supp.2d 755, 771 (W.D. Ky. 1998); *see Field v. Mans*, 516 U.S. 59, 73 n.12 (1995) (citing *Sanford Const. Co.*, 443 S.W.2d at 233-34); *see Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 921 (6th Cir. 2007). In all events, a party must "use reasonable prudence to avoid deception." *Ripy v. Cronan*, 115 S.W. 791, 794 (Ky. 1909).

The UK Defendants contend that even if there was reliance, which they deny, Tyson and the Kentucky Defendants were clearly aware of the danger of dealing with Brearly and could not "reasonably or justifiably have believed that Sports Network stood behind Brearly's promises"

---

arranged) and the opportunity to have their fighter, Danny Williams, "slipped" as Tyson's opponent. *See In re Tyson*, 412 B.R. at 629-30.

because it was clearly and unequivocally communicated to Tyson's agents that Warren and Sports Network would not guarantee Brearly's obligations. *Simons' Memorandum of Law* at 12. Warren's testimony, which was independently confirmed by Showtime executive Ken Hirschman, is that on a conference call with one of Tyson's representatives, Shelly Finkle, on or around July 21, 2004, he "categorically" and "emphatically" denied that he or any of his companies would guarantee Brearly's obligations to Tyson. *See* March 25, 2009 Trial Tr. at 107-08, 27. In the same call, Warren personally guaranteed that Showtime would receive the payment from Brearly it was due under to the Assignment Agreement.[8]

On the record as a whole, it is clear that Plaintiff and the Kentucky Defendants were well aware of the risks of dealing with an entity such as Brearly. *See* March 26, 2009 Trial Tr. at 132; *see* March 27, 2009 Trial Tr. at 140-42. In light of Warren's refusal to guarantee Brearly's obligations, and knowing the risks of dealing with a separate corporate entity without receiving a guarantee, neither Tyson nor the Kentucky Defendants' reasonably relied on any representation that the UK Defendants' would be responsible for Brearly's debts when they went forward with the Fight despite failing to obtain contractual protections. *See Wilson v. Henry*, 340 S.W.2d 449, 451 (1960) (applying Kentucky law); s*ee also*, *Aron Alan, LLC v. Tanfran, Inc.*, 240 Fed. Appx. 678, 681 (6th Cir. 2007) (applying Michigan law); s*ee also*, *DePriest v. Hardymon*, 209 Fed. Appx. 525, 529 (6th Cir. 2006) (applying Tennessee law); s*ee also*, *3F Therapeutics, Inc.*, 2011 U.S. Dist. LEXIS 17299, *21-22 (applying New York law).

---

[8] Webb and his matchmaker, Sampson Lewkowicz, each assert that on at least one other occasion, Warren personally guaranteed that Tyson would get paid. *See* March 24, 2009 Trial Tr. at 102–03 (Sampson Lewkowicz); *see* March 27, 2009 Trial Tr. at 118 (Webb). Webb also asserts that Simons "repeatedly" guaranteed payment to the Kentucky Defendants, with the first such instance being as early as June 10, 2004. *See* March 27, 2009 Trial Tr. at 116–17. These assertions are inconsistent with Warren's flat refusal to provide a guarantee, which was corroborated by Showtime executive Ken Hirschman. Indeed, as discussed below, Webb refused to sign the Distribution Agreement because of concerns about the agreement with Brearly.

11

As noted above, Plaintiff charges the UK Defendants with other untrue representations, including that Brearly was (i) a Sports Network entity, (ii) being used for tax purposes, and (iii) that this was consistent with the UK Defendants' past practices.[9] *Plaintiff's Memorandum of Law* at 14 (Dkt. No. 226). Instead of being a "Sports Network entity," Brearly turned out to be a minimally capitalized shell corporation that had no connection to the Sports Network companies. Representations regarding Brearly's status may have assisted in lulling Tyson and the Kentucky Defendants into accepting Brearly as their contractual counterparty. However, the Kentucky courts presume that reasonable people diligently investigate the particulars of a transaction and treat a counterparty's claims with caution. *See Aron Alan, LLC*, 240 Fed. Appx. at 683. The record is devoid of any evidence that Tyson or the Kentucky Defendants conducted any diligence on Brearly's financial or corporate status, or requested documentation supporting the claims made by the UK Defendants as to Brearly.

As noted above, the sophistication of the parties is material in considering the reasonableness of their reliance. Tyson employed sophisticated advisors with substantial negotiating experience to handle negotiations with the UK Defendants. Stephen Espinoza, who represented Tyson as his attorney, was well aware of the risks inherent in dealing with Brearly. *See* March 23, 2009 Trial Tr. at 32 (Dkt. No. 156). Moreover, although Espinoza testified that Tyson would not have proceeded with the Fight had he known that he would not receive his entire $7.2 million purse (part of which was expected to be paid by assignment of a portion of the Advance Minimum Guarantee), the record as a whole does not support this assertion. Under the Assignment Agreement, Brearly was only obligated to pay Tyson a maximum of $1.4 million, a relatively small part of Tyson's total purse, and the evidence as a whole does not

---

[9] Plaintiff also charges that the UK Defendants misrepresented the fact that all international revenues relating to the Fight were being funneled through Brearly. The record at trial established that the international revenues generated by the Fight were funneled through Brearly.

support the proposition that Tyson's advisors seriously considered withdrawing him from this critical come-back fight at the last minute.

The Kentucky Defendants' advisors also understood the risks of dealing with Brearly. Although this appears to have been Webb's first major boxing promotion, *see* March 27, 2009 Trial Tr. at 80 (Dkt. No. 220), and his initial counsel may not have been as experienced as some of the other advisors, the Kentucky Defendants hired new counsel before the contracts were finalized and before the Fight occurred.[10] Mr. Tigue, Webb's new counsel, advised the Kentucky Defendants not to sign the Distribution Agreement because, among other things, he felt that "it does not guarantee a minimum payment of 2.7 million by irrevocable letters of credit" and was "not acceptable." March 27, 2009, Trial Tr. at 50.

Under Kentucky law, the only time that a plaintiff is not obligated to exercise due care is where a confidential relationship exists between counterparties or "where fraud or artifice is used to prevent inquiry or investigation." *See Ripy v. Cronan*, 115 S.W. at 794. No party has alleged that a confidential or fiduciary relationship existed with the UK Defendants. Nor are there serious allegations that the UK Defendants' alleged misrepresentations prevented inquiry or investigation. On the record as a whole, Tyson and the Kentucky Defendants failed to establish by clear and convincing evidence that their reliance was reasonable or justifiable.

### 3. Reconsideration of the Kentucky Defendants' Motions Pursuant to FED. R. CIV. P. 15(b)(2) and 54

The Kentucky Defendants assert that the Court should have allowed a post-trial amendment of their pleadings to include a fraud cross-claim against the UK Defendants. FED. R. CIV. P. 15(b)(2) provides that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." FED. R.

---

[10] The Court understands that Webb brought a lawsuit against his initial counsel. *See* March 27, 2009 Trial Tr. at 33-34.

CIV. P. 15(b)(2). The purpose of FED. R. CIV. P. 15(b) is to allow the pleadings to conform to issues actually tried and therefore, where justice requires, leave to amend pleadings is to be freely given. *See Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir. 1977); *Campbell v. City of New York*, Case No. 99-5129, 2003 WL 660847 at *4 (S.D.N.Y. 2003), *aff'd,* 93 Fed. Appx. 315 (2d Cir. 2004). Justice requires amendment where the issues were tried by the parties' consent, and the defendant had a full and fair opportunity to defend against the new claims. *Id.*

By contrast, a motion to amend should be denied if amendment would be futile, would result in undue prejudice to the opposing party or is the result of bad faith or dilatory motive on the part of the movant. *Parrish v. Sollecito*, 280 F.Supp.2d 145, 158-59 (S.D.N.Y. 2003). As this Court previously observed, on a tentative basis, "the plaintiff never got to the point of proving reasonable reliance and/or damages over and above a contract that was agreed to by the parties . . . [a]nd there is no evidence in this record . . . that would provide the plaintiff with a fraud recovery." October 22, 2009 Trial Tr. at 12 (Dkt. No. 196). For the reasons discussed above, we find that amendment of the Kentucky Defendants' pleadings would be futile because the evidence precludes a finding that they reasonably relied on the UK Defendants' misrepresentations. We also deny amendment because the Kentucky Defendants elected to sue under the contract and may not now maintain an action for fraudulent inducement as well.

### 4. Preclusion

In our previous opinion, we found that "[t]he Kentucky Defendants overreach when they argue that the default judgment entered in the Kentucky litigation regarding Straight Out's breach of contract claim against Brearly should be determinative and conclusive on the amount of damages." *In re Tyson*, 412 B.R. at 639. In particular, we suggested that the Kentucky Default

14

Judgment was premised on a premature calculation of damages, given the evidence at trial that Straight-Out had assigned away "the entire amount of its $2.7 million guaranteed recovery" from Brearly through the Assignment Agreement. *Id*. We concluded that "[s]ince the proceeds from the international sales of the Fight did not exceed $2.7 million, Straight Out did not establish that it has a right to a net contractual recovery based on the record in this case." *Id*. The Kentucky Defendants argue that this was an error. They assert that the UK Defendants are bound by the Kentucky Default Judgment on *res judicata* grounds pursuant to *Taylor v. Sturgell,* 553 U.S. 880 (2008), in that the UK Defendants "completely controlled the legal defense of Brearly before the Kentucky federal district court." The Kentucky Default Judgment was entered as of February 28, 2008 against Brearly and in favor of Straight-Out in the amount of $4,554,191 plus post-judgment interest. *See* December 15, 2008 Order in *Straight-Out Promotions, LLC. v. Brearly (Int'l) Ltd.*, Civil Action No. 04-473 (W.D. Ky.) (Dkt. No. 52).

As the District Court held in its decision on the appeal in this case, "'[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit,' and therefore, a person is not bound by a judgment 'in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *In re Michael G. Tyson*, 433 B.R. at 99 (citing *Taylor*, 553 U.S. at 891). The Kentucky Defendants assert that one or both of the following *Taylor v. Sturgell* exceptions should apply: (i) that a nonparty is bound by a prior judgment if that nonparty "assumed control over the litigation in which that judgment was rendered," and (ii) "that a party is bound where the nonparty is a 'proxy,' 'agent,' or 'designated representative' of a 'person who was a party to the prior adjudication.'" *Id.* at 895. At the Hearing, the Kentucky Defendants asserted that the UK Defendants are (i) bound by the Kentucky Default Judgment and prevented from re-litigating the

15

issues and (ii) liable for the damages awarded in that judgment. They are correct as to the first proposition in the preceding sentence but not as to the second.

There is no question that the UK Defendants completely controlled the legal defense that Brearly briefly interposed in the Kentucky Federal District Court before defaulting, and that they thereby acted as Brearly's proxy, agent or designated representative. Therefore, *Taylor v. Sturgell* would bar the UK Defendants from re-litigating the same issues that were decided by the Kentucky Federal District Court in *Straight-Out Promotions, LLC. v. Brearly (Int'l) Ltd.*, Civil Action No. 04-473 (W.D. Ky.) (December 15, 2008). However, nothing in *Taylor v. Sturgell* would allow the Kentucky Defendants to impose the damages in the Kentucky suit on the UK Defendants on a piercing of the corporate veil theory or otherwise. Corporate agents—even corporate officers who direct and control litigation against the corporation—do not automatically become liable for monies owed by the corporation. Taken to its logical end, if the Kentucky Defendants' position were sound, any corporate officer that acts for and controls a company would become liable for the judgment against the corporation based on a contract, despite the contract not being signed by the corporate officer in an individual capacity. This is clearly not what the law provides. *See* Restatement (Second) of Judgments § 27; *cf. Black v. CMT Trucking*, 2005 WL 267568 (Ky. App. Feb. 4, 2005).

Moreover, it would not be proper to enter a judgment in this case in the amount of the Kentucky Default Judgment, even against Brearly. As discussed in our prior opinion and not disturbed by the District Court, "the Kentucky Defendants overreach when they argue that the default judgment entered in the Kentucky litigation regarding Straight Out's breach of contract claim against Brearly should be determinative and conclusive on the amount of damages" because "Straight Out did not establish that it has a right to a net contractual recovery based on

16

the record in this case." *In re Tyson*, 412 B.R. at 639; *see, e.g., Perle v. Fiero (In re Perle)*, Case No. 06-1971, 2010 WL 6259964 at *9 (9th Cir. B.A.P. 2010). In this case, the trial on damages was conducted against the defaulting defendant, Brearly, at the same time as the trial against the non-defaulting parties. *See* 412 B.R. at 637, *citing Cho v. Koam Med. Servs. P.C.*, 524 F.Supp 202, 205 (E.D.N.Y. 2007). At the trial, the evidence did not support the theories underlying the Kentucky Default Judgment on the issue of damages, and if any party should seek to enter a default judgment against Brearly, it would have to be based on the record in this case. On the other hand, nothing in this decision or in this Court's previous decision is intended to affect the Kentucky Default Judgment as a separate, outstanding judgment against Brearly.

### 5. Attorney's Fees

Finally, the District Court has instructed us to consider on remand whether Warren should recover any award of attorney fees for his victory on the English-law, veil-piercing claim. Because this case involved a cause of action under English law, the so-called "English Rule" applies to the issue of attorney fees, at least with respect to veil piercing. *See In re Michael G. Tyson*, 433 B.R. at 96. Under appropriate circumstances, the "English Rule" allows the prevailing party to recover its costs, including attorney fees, from the losing party. *Id.*, citing *APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 957 (9th Cir. 2009), and *RLS Assocs., LLC v. United Bank of Kuwait PLC,* 464 F.Supp.2d 206, 210 (S.D.N.Y. 2006).

Under English law, the ultimate determination whether it is appropriate to award costs and the amount of such costs "rests within the discretion of the court." *In re Michael G. Tyson*, 433 B.R. at 96, citing *Hullock v. E. Riding of Yorkshire County Council*, [2009] EWCA Civ 1039 [¶19] (C.A.) and *Lamont v. Burton*, [2007] EWCA Civ 429 [¶ 20] (C.A.). The District Court declined to reach this aspect of Warren's appeal because, among other things, there was a

17

possibility that Tyson or the Kentucky Defendants might ultimately prevail on other grounds. Since we find that Tyson and the Kentucky Defendants cannot prevail on their fraudulent inducement claims, we now consider whether it is appropriate to award Warren costs.

Courts applying the English Rule have wide discretion to deny a successful litigant all or part of their costs based on equitable considerations. *Bensen v. American Ultramar Ltd.*, 1997 WL 317343 at *7 (S.D.N.Y. June 12, 1997); *see also In re Michael G. Tyson*, 433 B.R. at 96, citing *Hullock v. E. Riding of Yorkshire County Council*, [2009] EWCA Civ 1039 [¶19] (C.A.) and *Lamont v. Burton*, [2007] EWCA Civ 429 [¶ 20] (C.A.). There are many such equitable considerations present in this case. As discussed above and in our previous decision, the UK Defendants acted in a dishonest fashion. They provided conflicting and incredible testimony before this Court. They controlled Brearly, a co-defendant, as it first appeared in this adversary proceeding and then defaulted. They also took steps that were inconsistent with a continuing demand for costs. Thus, by motion dated March 11, 2009, on the eve of trial, the UK Defendants, relying on English law, moved for an order requiring Tyson and the Kentucky Defendants to post a bond as security for costs, including attorney's fees, in this action. Prior to the hearing on the matter, the UK Defendants withdrew their motion with respect to Tyson: perhaps recognizing that Plaintiff is acting as a fiduciary for creditors and has distributed the vast majority of the assets in Tyson's estate to the estate's creditors, and that it would be inequitable and likely futile to attempt to claw back such distributions from the estate's creditors. With respect to the Kentucky Defendants, the Court found that the motion was untimely. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

Given the equities of the case, it would be an injustice to allow the UK Defendants to resuscitate a claim for attorneys' fees at this late date. Considering the record as a whole, the Court finds that the UK Defendants should not be awarded costs under the English Rule.

## CONCLUSION

For the reasons stated above, we find that (i) neither Tyson nor the Kentucky Defendants has proved each of the elements of fraud under Kentucky law by clear and convincing evidence, (ii) the UK Defendants are not liable for the damages assessed against Brearly in the Kentucky Default Judgment, (iii) Warren is not entitled to attorney's fees for his successful defense of the veil-piercing claim, and (iv) the Kentucky Defendants' motions pursuant to FED. R. CIV. P. 15(b) and 54 should be denied.

The UK Defendants should settle an order for judgment in their favor on Tyson and the Kentucky Defendants on five days' notice. That judgment will leave undisturbed Tyson's judgment against Straight-Out. Brearly also defaulted in this case, but a judgment was never entered; any party may promptly settle a default judgment against Brearly if it is so advised. In any event, the Kentucky Default Judgment (against Brearly) will be unaffected by any judgment entered in this case.

Dated: May 13, 2011
      New York, New York

                              */s/ Allan L. Gropper*
                              UNITED STATES BANKRUPTCY JUDGE